# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  09-CR-3178-L |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| JACOBO MOISES-MENDOZA, | ) | |
| | ) | |
| Defendant. | ) | |

An evidentiary hearing was held on May 7, 2010 regarding the mental competency of defendant, Jacobo Moises-Mendoza.  Having now fully considered the evidence presented at the hearing, the psychiatric reports, and the relevant legal authorities, the Court finds Defendant is competent to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

## Background

Defendant is charged with attempting to reenter the United States after deportation in violation of 8 U.S.C. § 1326.  Defendant was deported to Tijuana, Mexico, where his mother met him to attempt to provide a place where he could reside in Mexico. Defendant indicated he did not want to stay in Mexico, as he did not know anyone and had been raised primarily in the United States.  On August 3, 2009, Defendant proceeded to the pedestrian lane at the border and attempted to enter the United States using an

outdated border crossing card. Defendant was referred to secondary inspection where it was determined that he was an illegal alien who had just been deported, and he was charged with the current offense.

Defendant was examined by Dr. Francisco C. Gomez Jr., Ph.D., a nueroclinical psychologist on January 27, 2010 and again on February 24, 2010. Defendant was also examined by Dr. Mark A. Kalish, M.D., on March 3, 2010. Both experts were qualified to opine on Defendant's mental capacity.

**Discussion**

"Competency requires that the defendant have the 'capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). "Whether a defendant is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997), *cert. denied*, 124 S. Ct. 1104 (2004). *See also United States v. Gastelum-Almeida*, 298 F.3d 1167 (9th Cir. 2002).

In this case, both experts agree that Defendant is mentally impaired, with atrophy in the frontal lobes of his brain. Defendant had been seriously injured in an automobile accident in Mexico in 1997, and spent over a year in rehabilitation. He suffered physical injuries, was in a wheelchair and had to be fed, but gradually he regained mobility. He also sustained a head injury that caused the damage to his frontal lobes.

1.  *Dr. Gomez's Opinion*

According to Dr. Gomez, Defendant experienced personality changes after his accident. His head injury caused loss of memory, difficulty communicating, decreased speech, and fluctuation in mood. Defendant also has poor anger management and impulse control, that Dr. Gomez believes resulted in Defendant's becoming involved in legal problems (being charged with crimes) and sent to prison for several years. From a

clinical observation, Dr. Gomez concluded that Defendant appeared to be functioning in the borderline intellectual range of 75 to 80 IQ range.

Dr. Gomez concluded defendant does not appear to be competent to stand trial. Dr. Gomez found that while Defendant understands the charges, difference between pleas, court procedures, roles of court participants, and consequences of a guilty plea, he will have difficulty working with his attorney on trial strategy, testifying on his own behalf, or following testimony during court proceedings. Dr. Gomez further found that Defendant is likely to be a passive participant in his defense or decision on plea agreements, and his neurocognitive impairment will impair his ability to process the information necessary to help with his defense.

2.  *Dr. Kalish's Opinion*

At the time of his interview on March 3, 2010, Dr. Kalish stated Defendant's cognitive functioning indicated he is oriented to person, place, and time. Dr. Kalish found Defendant's memory is intact for immediate, recent, and remote events. He also found Defendant's general fund of information is adequate and his general intellectual functioning appears to be within normal range. However, his judgment is poor and insight fair. Dr. Kalish agreed with Dr. Gomez that "Mr. Mendoza's poor anger management and impulse control resulted in him becoming involved in legal problems and he was eventually sent to prison for several years as a result of aggressive behavior."

Dr. Kalish indicted there was an inconsistency between Defendant's responses to him, as compared to his responses to Dr. Gomez. Specifically, the differences being:

a.  When examined by Dr. Gomez, Defendant was oriented to person, place, and time. When examined by Dr. Kalish, Defendant knew the year was 2010, but claimed he had no idea what the month or date was.

b.  When examined by Dr. Gomez, Defendant understood the role of the court participants. However, he told Dr. Kalish the jury works for the prosecutor.

Dr. Kalish believes these inconsistent responses indicate an "attempt to malinger and appear worse than he actually is." Dr. Kalish noted that the inconsistent pattern of

responding is also reflected in the neuropsychological testing administered by Dr. Gomez. Dr. Kalish concluded that Defendant is competent to stand trial and that "Defendant is not suffering from a mental disease or defect which renders him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense."

### *3.     Court's Findings*

After reviewing the reports by both experts and the testimony presented at the hearing on May 7, 2010, the Court agrees with Dr. Kalish. First, Defendant's accident occurred in 1997. He was convicted of criminal conduct in 1999, 2000, 2003, and 2005, and appeared in deportation hearings. As Dr. Kalish point out, it is unreasonable to believe that the defense attorneys, the prosecutors, and judges, in each of those cases all failed to properly assess or consider Defendant's competency, as Dr. Gomez suggested in his report. Second, this illegal entry case is not a complicated matter. The facts are straight forward and simple. By Defendant's own admission he did not want to be in Mexico. Considering that Defendant is mentally impaired, he may not be able to assist his counsel in a case involving fraud or other complicated theories. However, Dr. Gomez's assessment that Defendant understands the charges, difference between pleas, court procedures, roles of court participants, and a consequence of a guilty plea, indicate Defendant can aid his attorney in this case, should he want to. Finally, Dr. Gomez stated Defendant's passive behavior and lack of affect might explain why the attorneys and judges from Defendant's prior cases did not consider his demeanor was actually an inability to understand or aid his counsel. However, this Court can also surmise that his passive behavior can be explained by the fact that he does not care what happens to him. He has no goals, according to Dr. Gomez, as he cannot live in the United States where he grew up and has family and does not want to live in Mexico where he does not know anyone. It is reasonable to believe Defendant is passive and to a degree non-responsive. However, this does not mean he does not understand the circumstances of his case. It is more likely that he does not care. This is consistent with his impulse to return to the

United States with an outdated entry card.

## Conclusion

This is an unfortunate case, as are many, where a defendant's ties are all in the United States. However, based on the reports and testimony by the experts and the examination of the facts, the Court concludes Defendant is legally competent to stand trial and can aid his counsel in his defense, should he choose to do so.

**IT IS SO ORDERED.**

DATED: June 3, 2010

_____
M. James Lorenz
United States District Court Judge